CHRISTOPHER JOSEPH DESALVA (SBN 172209)
LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA
45-902 Oasis Street, Suite D, Indio, CA 92201
Telephone: (760) 447-0031 | Email: desalvalaw@gmail.com

Attorney for Petitioner
JEISSON ALIRIO ORJUELA MARIN

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| JEISSON ALIRIO ORJUELA MARIN,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, Warden, Adelanto ICE Processing Center; JAIME RIOS, Field Office Director, U.S. Immigration and Customs Enforcement, Los Angeles Field Office; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States,<br><br>Respondents. | Case No. ____________________<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR ORDER TO SHOW CAUSE WITHIN THREE (3) DAYS; DECLARATORY RELIEF**<br><br>**IMMEDIATE RELEASE REQUESTED** |

## I. INTRODUCTION

1. Petitioner JEISSON ALIRIO ORJUELA MARIN (A245-036-148) is a 31-year-old citizen of Colombia who has been held in the physical custody of U.S. Immigration and Customs Enforcement ("ICE") since July 25, 2026 — twenty-five (25) days as of the filing of this Petition. He is detained without a lawful custody determination, without any written explanation of why his liberty was revoked, and without any process of any kind before he was incarcerated.

2. This case begins with a decision the United States itself made. On July 4, 2023, the Department of Homeland Security released Petitioner on his own recognizance on Form I-220A, Order of Release on Recognizance. That order states, in the Government's own words, that Petitioner was released "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations." No bond was required. No finding of danger was made. No finding of flight risk was made. (Ex. A.)

3. Petitioner then kept that liberty for one thousand one hundred seventeen (1,117) days. He established a residence in North Hollywood, California. He obtained a California driver license on March 19, 2024. (Ex. B.) He filed an application for asylum and for withholding of removal with U.S. Citizenship and Immigration Services. When the Government ordered him to appear at the Application Support Center in Gardena on April 14, 2025, he appeared, and the Government's own processing stamp on its own notice records that he did. (Ex. C.) As recently as August 3, 2026, the Internal Revenue Service assigned him an individual taxpayer identification number. (Ex. D.) Every one of these facts is documented by a record the Government itself created.

4. On July 25, 2026, ICE officers arrested Petitioner in Long Beach, California — in the interior of the United States, roughly 130 miles from the nearest port of entry — in the same enforcement action in which they arrested his wife.

5. So far as the record reflects, the Government has never identified a single condition of the July 4, 2023 order that Petitioner violated. It has never issued a written determination revoking that order. The "Cancellation of Order" block on the face of its own release form is blank — no box checked, no signature, no date. (Ex. A.) It gave Petitioner no notice, no opportunity to respond, and no hearing before a neutral decisionmaker before taking away a liberty he had held and honored for more than three years.

6. The Constitution does not permit that. Where the Government grants an established period of conditional liberty and then revokes it, the Due Process Clause requires notice, an opportunity to be heard, and an individualized determination before the deprivation. Mathews v. Eldridge, 424 U.S. 319 (1976). That is Count One, and it is sufficient by itself to grant the writ.

7. Count Two is independent, and it is now controlled by binding precedent. On July 30, 2026 — three weeks before this filing — the Ninth Circuit held in a published opinion that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez Vazquez v. Bostock, No. 25-6842, slip op. at 10 (9th Cir. July 30, 2026). Petitioner was arrested in Long Beach, in the interior, and the Government's own 2023 paperwork already designated his custody under INA § 236. To the extent Respondents now assert authority under § 1225(b)(2)(A), that designation cannot survive Rodriguez Vazquez.

8. Count Three is independent as well. Detention must serve a concrete, lawful purpose. Zadvydas v. Davis, 533 U.S. 678 (2001). Respondents have identified none here that community supervision did not already serve for three years.

9. This Court has already addressed this enforcement action. Petitioner's wife, Yury Esperanza Torres Avella, was seized in the same operation on the same day. On August 14, 2026, in Torres Avella v. Janecka, No. 5:26-cv-04362-RGK-PD (C.D. Cal.),

this Court granted her petition on her due process count, dismissed the remaining counts without prejudice, and ordered Respondents to release her within twenty-four (24) hours "on the same conditions of release that existed before her re-detention," to return all of her seized belongings, and to file a status report within three days. Respondents complied. She is at liberty today. Petitioner — released by the same agency, on the same day, in the same CBP event, under the same statute, and re-detained in the same operation — remains incarcerated. (Ex. E.)

10. Petitioner respectfully requests that this Court issue an order to show cause returnable within three (3) days under 28 U.S.C. § 2243, grant the writ, and order his immediate release; or, in the alternative, order his release within twenty-four (24) hours on the same conditions of release that existed before his re-detention.

## II. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 2241(a) and (c)(3), which authorize the federal courts to grant the writ to persons held in custody in violation of the Constitution or laws of the United States. Federal district courts retain habeas jurisdiction over constitutional and statutory challenges to immigration detention; 8 U.S.C. § 1226(e) does not bar such claims. Hernandez v. Sessions, 872 F.3d 976, 987-88 (9th Cir. 2017).

12. This Court also has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201-2202 (declaratory relief), 5 U.S.C. §§ 701-706, and Article I, § 9, clause 2 of the Constitution (the Suspension Clause). Nothing in 8 U.S.C. § 1252 strips jurisdiction over statutory and constitutional challenges to the legality of detention. Jennings v. Rodriguez, 583 U.S. 281, 292-94 (2018).

13. Petitioner challenges only the lawfulness of his detention. He does not ask this Court to review any order of removal, to adjudicate his application for asylum, or to

review any decision to commence proceedings or execute a removal order. 8 U.S.C. § 1252(g) is therefore not implicated.

14. Venue is proper in this District under 28 U.S.C. § 2241(d) because Petitioner is physically confined within it, and his immediate custodian is located within it. Rumsfeld v. Padilla, 542 U.S. 426, 442-43 (2004). Petitioner is detained at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301, in San Bernardino County, which lies within the Eastern Division of this District.

15. Respondents' own records confirm this. As of August 19, 2026, the ICE Online Detainee Locator System reports that Petitioner, A-Number 245036148, a native of Colombia, has the status "In ICE Custody" in the State of California, with a current detention facility of "ADELANTO ICE PROCESSING CENTER." (Ex. F.)

## III. PARTIES

16. Petitioner JEISSON ALIRIO ORJUELA MARIN is a citizen and national of Colombia, born in Bogotá in August 1994. He has resided in the United States continuously since July 2023 and is currently detained at the Adelanto ICE Processing Center.

17. Respondent FERETI SEMAIA is sued in his official capacity as Warden of the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301. He is Petitioner's immediate physical custodian. [ATTORNEY NOTE — Adelanto is operated by The GEO Group; the Warden is not a federal employee and is served and represented separately from the federal Respondents. Re-verify the current Warden before filing.]

18. Respondent JAIME RIOS is sued in his official capacity as Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, Los Angeles Field Office. He exercises legal custody over Petitioner.

19. Respondent DAVID VENTURELLA is sued in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, 500 12th Street SW, Washington, DC 20536.

20. Respondent MARKWAYNE MULLIN is sued in his official capacity as Secretary of the U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Avenue SE, Washington, DC 20528.

21. Respondent TODD BLANCHE is sued in his official capacity as Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT REQUIRED AND WOULD BE FUTILE

22. Section 2241 contains no statutory exhaustion requirement. Exhaustion in habeas "can be either statutorily required or judicially imposed as a matter of prudence," and where the requirement is prudential, "courts have discretion to waive" it. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Waiver is appropriate where administrative remedies are inadequate, where irreparable injury may occur without immediate judicial relief, or where exhaustion would be futile. Laing v. Ashcroft, 370 F.3d 994, 1000-01 (9th Cir. 2004). Each condition is met here.

23. First, no administrative forum can adjudicate the claim Petitioner actually brings. An immigration judge conducting a custody redetermination decides bond. He does not decide whether the revocation of a three-year period of conditional liberty, without notice or any opportunity to be heard, violated the Due Process Clause. The agency cannot grant the relief sought because it cannot reach the question presented.

24. Second, the relief Petitioner seeks is not bond. He seeks release from a confinement imposed without any pre-deprivation process. A custody redetermination

conducted weeks after the fact cannot restore liberty that was taken without the process the Constitution required before it was taken, and so the administrative forum cannot grant the relief sought. District courts in this Circuit have waived prudential exhaustion where the agency cannot reach the claim or the remedy. Cerro Huerta v. Bondi, No. 1:25-cv-00941-JLT-HBK (E.D. Cal. Jan. 9, 2026); Sanchez v. LaRose, No. 25-cv-3136-JLS-JLB (S.D. Cal. Nov. 24, 2025).

25. Third, the injury is continuing and irreparable. Each additional day of unlawful physical confinement is a separate constitutional injury that no later administrative decision can undo. Because Petitioner is a person in custody, and because the deprivation is ongoing, Petitioner respectfully requests that any objections period be shortened or eliminated and that release be ordered forthwith. See L.R. 72-3.4.

## V. FACTUAL BACKGROUND

### A. The Government's July 4, 2023 Decision to Release Petitioner

26. Petitioner departed Colombia on or about June 30, 2023. (Ex. G.) On July 4, 2023, the Department of Homeland Security served him with Form I-220A, Order of Release on Recognizance, File No. A245-036-148, Event No. BLV2307000027. (Ex. A.)

27. The order states: "You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance ...." (Ex. A.) The Government thus recorded its own statutory basis for Petitioner's custody: INA § 236, codified at 8 U.S.C. § 1226.

28. The order imposed six conditions: that Petitioner report for any hearing or interview as directed; that he surrender for removal if so ordered; that he report in person

as indicated on an attached Form G-56; that he not change his residence without written permission; that he not violate any law or ordinance; and that he assist the Department in obtaining travel documents. (Ex. A.)

29. The order required no bond. It reflects no finding that Petitioner presented a danger to the community. It reflects no finding that he presented a flight risk. It was signed by an Acting Patrol Agent in Charge and acknowledged by Petitioner the same day, in Spanish. (Ex. A.)

**B. Petitioner Held That Liberty for 1,117 Days and Complied With It**

30. Petitioner established a residence at 5611 Fulcher Avenue, Apartment 18, North Hollywood, California 91601. (Ex. B.) [FACT REQUIRES VERIFICATION — confirm current residence and that any change of address was reported as required.]

31. On March 19, 2024, the California Department of Motor Vehicles issued Petitioner a driver license, valid through August 30, 2028. (Ex. B.)

32. Petitioner applied for asylum and for withholding of removal on Form I-589. On March 27, 2025, U.S. Citizenship and Immigration Services issued Form I-797C directing him to appear at the Application Support Center in Gardena, California on April 14, 2025 at 2:00 p.m. for biometrics. (Ex. C.)

33. Petitioner appeared as directed. The Government's own notice bears its biometrics and tenprint processing stamps dated April 14, 2025. (Ex. C.) Petitioner's compliance is not a matter of character testimony; it is documented by the Government's own record.

34. On August 3, 2026 — three weeks before his arrest — the Internal Revenue Service issued Notice CP565 (SP) assigning Petitioner an individual taxpayer identification number ending in 7854. (Ex. D.)

35. Petitioner has been represented by counsel in his immigration matter throughout. (Ex. C.)

**C. The July 25, 2026 Arrest**

36. On July 25, 2026, officers of U.S. Immigration and Customs Enforcement arrested Petitioner in Long Beach, California. Long Beach lies in the interior of the United States, approximately 130 miles from the nearest port of entry.

37. Petitioner was arrested in the same enforcement action, on the same date, in which ICE arrested his wife, Yury Esperanza Torres Avella (A245-036-150). Her verified petition in the companion proceeding alleges that she was seized while peacefully attending a public event in Long Beach by an officer who appeared to be local law enforcement and who then delivered her to ICE; that no warrant was presented and no articulable suspicion was stated; that her companions were likewise seized without cause; and that her telephone, purse, and all identity and immigration documents were confiscated. (Ex. E.)

38. The relationship between the two matters is established by the Government's own records. Both Petitioner and his wife were processed in a single Customs and Border Protection event — Event No. BLV2307000027 appears on both Forms I-220A — both were released on July 4, 2023 by the same Acting Patrol Agent in Charge, both orders recite release under INA § 236, and both were served in Spanish. (Ex. A.)

39. Respondents' agents confiscated Petitioner's California driver license and his cellular telephone at the time of the arrest. Neither has been returned.

40. The confiscation is not merely an inconvenience. The California driver license is the document establishing Petitioner's fixed residence and his lawful, licensed conduct during the 1,117 days he held the Government's release order. (Ex. B.) The telephone is the device on which he communicated, kept his records, and — on

information and belief — received and confirmed appointments with the Government. Respondents have thus taken from Petitioner the principal means of documenting the very compliance on which his liberty interest rests, while simultaneously detaining him for an asserted risk that his compliance refutes.

### D. This Court Has Already Granted Relief on the Same Operation

41. On August 3, 2026, Mrs. Torres Avella filed a petition for a writ of habeas corpus in this District. Torres Avella v. Janecka, No. 5:26-cv-04362-RGK-PD. (Ex. E.)

42. On August 14, 2026 — eleven days later — the Honorable R. Gary Klausner accepted the Report and Recommendation of the United States Magistrate Judge, granted the petition "as to Count Two under due process," and dismissed the remaining counts without prejudice. The Court ordered Respondents to release Mrs. Torres Avella from immigration custody "within 24 hours of this Order on the same conditions of release that existed before her re-detention"; to return all personal belongings seized from her, including her telephone, purse, employment authorization document, Social Security card, California driver license, and all identity and immigration documents; and to file a status report within three days confirming both her release and the return of her property. (Ex. E.)

43. Respondents complied. Mrs. Torres Avella was released and is at liberty. Petitioner, seized in the same operation on the same day, remains in custody.

### E. No Process Preceded the Deprivation

44. Petitioner received no advance notice that the Government intended to revoke his release.

45. Petitioner was given no opportunity to respond to any allegation of non-compliance before he was taken into custody.

46. No neutral decisionmaker reviewed the revocation before Petitioner was incarcerated.

47. No written determination revoking the July 4, 2023 order has been provided to Petitioner or to undersigned counsel. The "Cancellation of Order" section on the face of Form I-220A — which the Government designed for exactly this purpose, and which requires the serving officer to state whether the alien failed to comply with the conditions of release or was taken into custody for removal — is entirely unexecuted on the copy in Petitioner's possession. (Ex. A.)

48. The Government has not identified any changed circumstance between July 4, 2023, when it determined that release on recognizance was sufficient, and July 25, 2026, when it determined that physical incarceration was necessary.

### F. Criminal History

49. Petitioner has no criminal convictions, no pending criminal proceedings, and no prior order of removal, then mandatory detention under 8 U.S.C. § 1226(c) does not apply and this paragraph should so state.

## VI. LEGAL FRAMEWORK

### A. Revocation of Established Conditional Liberty Requires Due Process

50. The Due Process Clause of the Fifth Amendment applies to all persons within the United States, including noncitizens, and freedom from physical restraint is the most elemental of liberty interests. Courts in this District have repeatedly held that the re-detention, without notice or a pre-deprivation hearing, of a noncitizen who was released

on conditions shortly after entry and who complied with those conditions violates procedural due process. Cruz v. Lyons, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025); Yataco v. Warden, Adelanto Det. Facility, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026); Madrigal-Cortez v. Santacruz, No. 2:26-cv-01939-RGK-MAA, 2026 WL 1045639, at *4 (C.D. Cal. Feb. 27, 2026).

51. The adequacy of the process due is measured by the three factors of Mathews v. Eldridge, 424 U.S. 319, 335 (1976): the private interest affected by the official action; the risk of an erroneous deprivation of that interest through the procedures used and the probable value of additional or substitute safeguards; and the Government's interest, including the fiscal and administrative burdens that the additional safeguard would entail.

**1. Private Interest**

52. Petitioner has a substantial liberty interest in maintaining his settled life out of custody. He was released on his own recognizance on July 4, 2023 and remained at liberty for 1,117 days. He maintained a fixed residence in North Hollywood, obtained a California driver license, pursued a pending affirmative asylum application, appeared for biometrics when USCIS directed him to, obtained a taxpayer identification number, and lived with his wife in Los Angeles County until both were seized on July 25, 2026.

53. That his liberty was conditional does not diminish it. "[A] person who is in fact free of physical confinement — even if that freedom is lawfully revocable — has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." Hurd v. District of Columbia, 864 F.3d 671, 683 (D.C. Cir. 2017); accord Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (individuals who face significant constraints on their liberty nonetheless retain a protected interest in it).

54. Petitioner's release carried "an implicit promise that [it] will be revoked only if he fails to live up to the ... conditions," and such conditional liberty is "valuable and must be seen as within the protection of the Fourteenth Amendment." Morrissey v.

Brewer, 408 U.S. 471, 482 (1972); see Hogarth v. Santacruz, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025).

56. Courts have found protected liberty interests in materially shorter periods of conditional release. Manzanarez v. Bondi, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (over two years on an order of release on recognizance); C.A.R.V. v. Wofford, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) (approximately four years on parole); Fernandez Lopez v. Wofford, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (nearly four years on parole). Manzanarez is closest to this case: that petitioner, like Petitioner here, held an order of release on recognizance rather than parole — and held it for less time than the 1,117 days at issue here.

**2. Risk of Erroneous Deprivation**

56. The primary purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a secondary purpose of preventing danger to the community. Zadvydas v. Davis, 533 U.S. 678, 697 (2001). Petitioner has been afforded no process to determine whether his detention in fact advances either purpose.

57. The Government has already answered that question in his favor. Under 8 C.F.R. § 236.1(c)(8), the Government may release a noncitizen under section 1226 only where the person demonstrates "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." A release therefore "at least implicitly" "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Sun v. Santacruz, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025). Petitioner's release on July 4, 2023 was predicated on exactly that determination. (Ex. A.)

58. The risk of erroneous deprivation is considerable where the detainee has received no bond or custody redetermination at all. Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Petitioner has received none, and none has been scheduled. [FACT REQUIRES VERIFICATION — confirm that no custody redetermination has been held or calendared as of the filing date, and state the running detention day count as of that date.]

59. The seizure of Petitioner's driver license and telephone compounds that risk. A person who is given no notice, no statement of reasons, and no hearing is already poorly positioned to contest his own re-incarceration; a person who has simultaneously been stripped of the documents and the device with which he would prove his compliance is worse positioned still. The additional safeguard Petitioner seeks — notice and an individualized determination before deprivation — is precisely what would have surfaced that evidence.

60. No procedure of any kind reduced the risk of error here. There was no notice, no opportunity to respond, no individualized determination, and no review by a neutral decisionmaker. The Government's own contemporaneous records affirmatively establish compliance, and the Government has identified nothing that changed between its 2023 release determination and its 2026 reversal of it.

**3. Government Interest**

61. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). The countervailing administrative burden is minimal: "[i]n immigration court, custody hearings are routine." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

62. The Government weighed its enforcement interest on July 4, 2023 and concluded that release on recognizance served it. The marginal burden of providing

notice and an individualized determination before re-incarcerating a compliant person is slight when measured against the deprivation imposed.

63. The record now supplies an unusually direct test of that interest. Respondents released Petitioner's wife from the same operation on the same pre-existing conditions, within twenty-four hours, and did so without incident. (Ex. E.) Whatever interest Respondents assert in the physical incarceration of this household, their own compliance shows that supervised liberty serves it.

**B. Binding Ninth Circuit Precedent Places Petitioner Under 8 U.S.C. § 1226(a), Not § 1225(b)(2)(A)**

64. Three weeks before this Petition was filed, the Ninth Circuit resolved this question in a published opinion. In Rodriguez Vazquez v. Bostock, No. 25-6842 (9th Cir. July 30, 2026), the court held that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Slip op. at 10.

65. The panel held that "§ 1225(b)(2)(A), based on its text and context, is best construed as applying to aliens entering the United States at the border," while "[s]ection 1226 . . . is best understood as governing inadmissible and deportable aliens present in the interior of the United States." Slip op. at 25. Because "admission" is defined as "the lawful entry . . . into the United States after inspection and authorization," 8 U.S.C. § 1101(a)(13)(A), the phrase "seeking admission" requires that the noncitizen "be engaged in the affirmative process of attempting to gain 'entry' 'into' the country, which an alien does at the border (or a port of entry)." Slip op. at 29.

66. The court rejected the Government's contrary reading as creating surplusage, as inconsistent with ordinary usage, and as "in significant tension, if not outright conflict," with Torres v. Barr, 976 F.3d 918 (9th Cir. 2020) (en banc), which "rejected the

view that an alien remains in a perpetual state of applying for admission." Slip op. at 37. The court further observed that thirty years of unbroken Executive practice to the contrary is "strong evidence" that the asserted mandatory-detention duty "does not exist." Slip op. at 63.

67. Petitioner falls squarely within that holding. He was arrested on July 25, 2026 in Long Beach, California — in the interior of the United States, approximately 130 miles from the nearest port of entry, and more than three years after his release. He is therefore detained under 8 U.S.C. § 1226(a).

68. The Government's own records say the same thing. Its Form I-220A of July 4, 2023 recites that Petitioner was released "[i]n accordance with section 236 of the Immigration and Nationality Act." (Ex. A.) DHS classified this custody under § 1226 at the outset, and binding precedent now confirms that classification was correct.

69. Detention under § 1226(a) is discretionary and carries the possibility of release. 8 U.S.C. § 1226(a)(2); 8 C.F.R. §§ 236.1(c)(8), (d), 1003.19; Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) ("Section 1226(a) creates a default rule . . . by permitting — but not requiring — the Attorney General to issue warrants for their arrest . . . [and] also permits the Attorney General to release those aliens on bond."). A § 1226(a) detainee is entitled to release upon showing by a preponderance of the evidence that he is neither a flight risk nor a danger. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022). Petitioner is not subject to § 1226(c).

70. This District has reached the same conclusion in class litigation. In Maldonado Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), the court granted partial summary judgment and entered final judgment declaring that class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2). On March 31, 2026, the Ninth Circuit stayed that judgment pending appeal only "insofar as [it] extend[s] beyond the Central District of California," expressly providing that "[t]he district court's December 18, 2025 judgment remains in

place as to the Central District of California." Bautista v. DHS, No. 26-1044 (9th Cir. Mar. 31, 2026). This Court sits in that District.

**C. Detention Must Serve a Legitimate, Non-Punitive Purpose**

71. Civil immigration detention is constitutionally permissible only where it bears a reasonable relation to a legitimate governmental purpose — preventing flight or protecting the community. Zadvydas v. Davis, 533 U.S. 678, 690-92 (2001). Custody determinations must rest on an individualized assessment. Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011).

72. Neither purpose is served here. The Government's own three-year experiment answered the question: conditional release worked. Petitioner appeared when ordered to appear, maintained a fixed address, and pursued his immigration case through counsel. No individualized finding to the contrary appears anywhere in the record.

## VII. CLAIMS FOR RELIEF

**D. Section 1226(a) Authorizes Arrest Only on a Warrant**

73. Section 1226(a) authorizes the arrest of a noncitizen only "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). The single statutory exception permits a warrantless arrest only where the officer has reason to believe the person is in the United States in violation of law "and is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2); accord 8 C.F.R. § 287.8(c)(2)(ii).

74. Neither condition can be satisfied against a person who held a Government-issued release order for 1,117 days, maintained a reported address, and appeared before

the Government whenever directed to do so. A warrantless seizure without probable cause also violates the Fourth Amendment. Gonzalez-Rivera v. INS, 22 F.3d 1441, 1449-52 (9th Cir. 1994); United States v. Brignoni-Ponce, 422 U.S. 873, 885-87 (1975).

**E. Revocation of Release Is Governed by Regulation**

75. The Department's own regulations govern the revocation of a custody determination and require that the agency act by determination rather than by unannounced re-arrest. 8 C.F.R. § 236.1(c)(9)-(10). No such determination has been provided here.

**COUNT ONE — Fifth Amendment, Procedural Due Process**

76. Petitioner incorporates each preceding paragraph. Respondents revoked an established period of conditional liberty and returned Petitioner to physical confinement without notice, without a revocation determination, without an opportunity to be heard, without any individualized assessment of danger or flight risk, and without review by a neutral decisionmaker.

77. Petitioner has a strong interest in remaining free from confinement; there is a significant risk that the absence of constitutionally adequate procedures has resulted in his unnecessary detention; and the Government's interest in refusing to provide such process is minimal. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Respondents' re-detention of Petitioner without adequate pre-deprivation process violated due process, and the writ should issue.

78. Because this count affords the greatest relief available to Petitioner, this Court may grant the Petition on this count alone and decline to reach the remaining claims.

**COUNT TWO — Violation of INA § 236(a), 8 U.S.C. § 1226(a)**

79. Petitioner incorporates each preceding paragraph. Petitioner is a noncitizen present without admission who was apprehended in the interior of the United States. Under binding Ninth Circuit precedent he is therefore detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Rodriguez Vazquez v. Bostock, No. 25-6842 (9th Cir. July 30, 2026). The Government's own Form I-220A, which classified his custody under INA § 236 in 2023, says the same. (Ex. A.)

80. To the extent Respondents detain Petitioner under § 1225(b)(2)(A) and withhold the individualized custody determination that § 1226(a) and its implementing regulations require, 8 C.F.R. §§ 236.1(c)(8), (d), they act contrary to controlling circuit precedent, contrary to Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), and without any entitlement to deference. Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).

**COUNT THREE — Fifth Amendment, Detention Without Legitimate Purpose**

81. Petitioner incorporates each preceding paragraph. Respondents' continued physical detention of Petitioner bears no reasonable relation to any legitimate regulatory purpose. Zadvydas v. Davis, 533 U.S. 678 (2001); Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011). Respondents have identified no danger, no flight risk, and no circumstance that community supervision did not already address for 1,117 days.

**COUNT FOUR — Fourth Amendment and 8 U.S.C. § 1357(a)(2); Warrantless Arrest Without Probable Cause**

82. Petitioner incorporates each preceding paragraph. Petitioner was seized without a judicial or administrative warrant, without probable cause, and without individualized suspicion of any offense. The seizure violated the Fourth Amendment, 8 U.S.C. §§ 1226(a) and 1357(a)(2), and 8 C.F.R. § 287.8(c)(2)(ii). Gonzalez-Rivera v. INS, 22 F.3d 1441, 1449-52 (9th Cir. 1994); United States v. Brignoni-Ponce, 422 U.S. 873, 885-87 (1975). Because the detention flows directly from that seizure and continues without lawful process, the writ should issue.

**COUNT FIVE — Administrative Procedure Act, 5 U.S.C. § 706(2)**

83. Petitioner incorporates each preceding paragraph. Respondents' re-detention of a compliant releasee — without any revocation determination, contrary to the terms of the Government's own Form I-220A, contrary to 8 C.F.R. § 236.1(c), and in reliance on Matter of Yajure Hurtado — is agency action contrary to constitutional right, in excess of statutory jurisdiction, without observance of procedure required by law, and arbitrary and capricious. 5 U.S.C. § 706(2)(A)-(D). After Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), this Court owes the agency's contrary construction no deference.

## VIII. RELEASE BY THIS COURT IS THE ONLY ADEQUATE REMEDY

84. A remand for a custody hearing would not remedy the violation alleged in Count One. The constitutional defect is that Petitioner was incarcerated before any process occurred; a hearing conducted weeks afterward does not restore the liberty that was taken without one.

85. Nor does the availability of a future custody hearing answer the claim. The question a bond hearing asks — whether Petitioner should be released going forward —

is not the question this Petition raises. This Petition asks whether the Government could lawfully take his liberty in the first place without notice, without a revocation determination, and without any opportunity to be heard. An immigration judge has no authority to answer that question or to remedy its answer.

86. That is particularly so on this record, where the Government has proceeded as though no process were owed at all. On January 13, 2026, the Chief Immigration Judge issued nationwide guidance directing immigration judges to continue applying Matter of Yajure Hurtado notwithstanding this District's contrary declaratory judgment. Whether the immigration judges sitting at Adelanto have since conformed their practice to Rodriguez Vazquez is a matter of which Petitioner has no assurance.

87. The adequate remedy is the writ itself. This Court should order Petitioner's immediate release. In the alternative, and because the violation is one of process rather than of the underlying release decision, this Court should order his release within twenty-four (24) hours on the same conditions of release that existed before his re-detention — that is, the conditions of the July 4, 2023 Order of Release on Recognizance, which the Government itself designed and which functioned without incident for more than three years.

88. Complete relief also requires the return of what was taken. In the companion matter this Court ordered Respondents to return the detainee's telephone, purse, employment authorization document, Social Security card, California driver license, and all identity and immigration documents, and to confirm that return in a status report. (Ex. E.) Petitioner seeks the same as to his own driver license and telephone.

89. That is the precise relief this Court ordered eleven days after the petition was filed in the companion matter arising from the same operation, and Respondents complied with it within a day. Torres Avella v. Janecka, No. 5:26-cv-04362-RGK-PD (C.D. Cal. Aug. 14, 2026). (Ex. E.) Petitioner asks for nothing this Court has not already found appropriate on these facts.

## IX. REQUEST FOR ORDER TO SHOW CAUSE WITHIN THREE DAYS; DECLARATORY RELIEF

90. Under 28 U.S.C. § 2243 this Court "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted," and the return is due within three days unless good cause is shown. Given the continuing deprivation of liberty, Petitioner requests an Order to Show Cause requiring Respondents to file a return within three (3) days. A proposed order is lodged herewith.

91. An actual and justiciable controversy exists between Petitioner and Respondents concerning the lawfulness of his detention, the statute under which he is held, and the process constitutionally required before an established period of conditional liberty may be revoked. Petitioner is entitled to a declaration of rights under 28 U.S.C. §§ 2201-2202.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. ISSUE an Order to Show Cause requiring Respondents to show cause within three (3) days why the writ should not be granted, pursuant to 28 U.S.C. § 2243;

2. ISSUE a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately from custody;

3. IN THE ALTERNATIVE, ORDER Respondents to release Petitioner from immigration custody within twenty-four (24) hours of the Court's order, on the same conditions of release that existed before his re-detention on July 25, 2026;

4. DECLARE, pursuant to 28 U.S.C. § 2201, that Petitioner is detained under 8 U.S.C. § 1226(a) and that his detention without notice, an individualized determination, or any pre-deprivation process violates the Due Process Clause of the Fifth Amendment;

5. ORDER Respondents to return to Petitioner all personal belongings seized from him, including his California driver license and his cellular telephone, and including without limitation his wallet, his Colombian passport, and all identity and immigration documents;

6. ORDER Respondents to file a status report within three (3) days confirming (1) Petitioner's release and (2) the return to Petitioner of his personal belongings, including the above-listed items;

7. ENJOIN Respondents from transferring Petitioner outside this District during the pendency of these proceedings;

8. AWARD attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, to be requested by a properly filed separate motion; and

9. GRANT such other and further relief as the Court deems just and proper.

Dated: August 19, 2026

Respectfully submitted,

LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA

Christopher J. DeSalva

CHRISTOPHER JOSEPH DESALVA
Attorney for Petitioner
JEISSON ALIRIO ORJUELA MARIN

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, CHRISTOPHER JOSEPH DESALVA, declare as follows:

1. I am an attorney licensed to practice law in the State of California, State Bar No. 172209, and I am counsel of record for Petitioner JEISSON ALIRIO ORJUELA MARIN in this matter.

2. Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California, and is therefore unable to sign and verify this Petition personally.

3. Pursuant to 28 U.S.C. § 2242, a petition for writ of habeas corpus may be signed and verified "by the person for whose relief it is intended or by someone acting in his behalf." I make this verification on Petitioner's behalf because he is detained, his access to counsel is restricted, and obtaining his signature would delay the relief this Petition seeks, each day of which inflicts irreparable constitutional injury.

4. I have reviewed the foregoing Petition and the exhibits filed herewith. The factual allegations are true and correct to the best of my knowledge, information, and belief, based upon my review of Petitioner's immigration records and the exhibits, and upon information provided to me by Petitioner and his family.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on August 19, 2026, at Indio, California.

Christopher J. DeSalva

CHRISTOPHER JOSEPH DESALVA
Attorney for Petitioner

## CERTIFICATE OF SERVICE

I, DR. VICTOR M. VIRUENA, declare as follows:

1. I am over the age of eighteen years and not a party to this action. My business address is in Palm Desert, California. I act on behalf of Christopher J. DeSalva, Esq., counsel for Petitioner.

2. On the date set forth below, I caused the foregoing VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR ORDER TO SHOW CAUSE WITHIN THREE (3) DAYS; DECLARATORY RELIEF, together with all exhibits filed herewith, to be filed electronically with the Clerk of the Court using the CM/ECF system.

3. The CM/ECF system sends notification of such filing to all Respondents and all counsel of record, including the United States Attorney's Office for the Central District of California as counsel for the named Respondents. Service is complete upon electronic filing pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5-3.2.

4. I further caused a true and correct copy to be served by electronic mail upon the United States Attorney's Office for the Central District of California, Civil Division, and upon the Office of the Principal Legal Advisor, U.S. Immigration and Customs Enforcement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 19, 2026, at Palm Desert, California.

Dr. Victor Viruena

DR. VICTOR M. VIRUENA
On behalf of Christopher J. DeSalva, Esq.